I'll present the entire argument for all the appellants and I reserve five minutes rebuttal time and hopefully I won't run into it. We have four main actors in this case Tri-State Ethanol which is commonly known as TSE, Tri-State Financial which is commonly known as TSF, Centris Federal Credit Union and a group of 20 investors or 20 people who put up money and formed TSF to finance TSE's bankruptcy and I'm here today because my clients and the Hoytches cannot fathom how after the trial judge found that a trust was created in this case based upon substantial evidence and credible witnesses a successor judge who reviewed only the transcript and the same exact evidence ruled that we didn't create a trust and ruled and found on the same facts that our witnesses were not credible. The successor judge judge's ruling is based upon the exact same evidence and she made no finding that the trial judge's factual findings or decision were clearly erroneous or created manifest injustice. The trial was had in this matter back in October 2012. The trial judge said based upon uncontroverted evidence a trust was created and he stated the factual finding of the ownership interest in the funds in favor of the defendants other than centrist is based upon the credible evidence presented by the Omaha group concerning the creation of TSF including the purposes of its creation, the intent of the members of the Omaha group when the original monies were provided to TSF from the Omaha group, the manner in which the money was distributed to TSE, the records concerning the individual contributions of each member of the Omaha group, the minutes of the meetings of the Omaha group and the investors of TSF, the correspondence from Mr. Jandron to the Omaha group and the investors, the fact that the original distribution from the chapter 7 trustee in the TSE bankruptcy in the amount of $793,654.42 was distributed to each member of the Omaha group as a return of loaned funds with no objection from any investor who was not a member of the Omaha group and by the testimony of the individuals who created and operated TSF both before as an entity purchased TSE and after it did so. I think that clearly sets out the facts here. As a result of the trial judge's decision, this case was appealed by the trustee and centrist to the bankruptcy appellate panel. The bankruptcy appellate panel remanded the case for further rationale on issues of estoppel and release. I don't, as such, there was no final decision that had occurred and the case, and it wasn't, the BAP's decision was not appealable to this panel, to this court. And also the remand was unnecessary because the trial judge needn't decide every single issue. He only has to decide the ultimate issue. Did you allege error by the BAP? This point you just made, you didn't really allege, right? It's not really in your brief. Go ahead. But I think that's where it all started because we've, this thing's been going on since 2012. It's been up to BAP twice and district court once with, and BAP has never made it an appealable decision. It's never made a final decision. Also, on issues of release, the trustee openly admitted at trial, on the stand, that the releases didn't matter in this case. They weren't relevant. Now, the successor judge, once she got the case, due to the trial judge's retiring, reversed the entire case. But was it really a reversal? I mean, it, because there was no final decision on that, correct? Well, there was a final decision. If you look at PCH Associates and you look at Exxon, only a mandate, and Exxon specifically states only a mandate can change the law of the case. If you look at PCH Associates, we have a situation where we have a co-equal judge basically reversed, co-equal successor judge reversed a co-equal judge. Is your argument that that was error or that you're just highlighting what the original judge did to show how Judge Hastings erred? Judge Hastings erred because she reversed the original judge's order, the trial judge's order. As a matter of law, you're saying that's . . . Correct. Now, what if Judge Hastings had been the original judge and then it went back down from the BAP and she reconsidered her own assessment? Is that a different analysis? I don't think she could do that for the simple reason that before . . . once the law of the case has been established, Little Earth and Bethea v. I believe Levi Strauss clearly established that once the law of the case is established, it cannot be changed and a determination cannot be changed unless we have new evidence, which we did not in this case, or we have a clearly erroneous decision that results in manifest injustice. Let me ask you about our Ussery case. Our Ussery case is an Eighth Circuit case because we firmed it. As you know, the other courts here have relied on Ussery, so please address it. Well, Judge Hastings relied upon four cases, but Ussery was the main one. If you look at Ussery, the only thing reconsidered was damages. That was specific in the remand back to the trial court. Here the remand was for rationale on release and estoppel. It wasn't to reconsider anything else. Exxon says the mandate is the only thing that can change the law of the case, and PCH also says that. Why do you say it was law of the case? It was appealed, and it was neither affirmed nor reversed. It was not final. Because it was not reversed in the mandate by the BAP on the first appeal, the law of the case was established by Judge Mahoney's ruling. I think a clear reading of PCH makes that clear, and if you look at what damages were reconsidered in accordance with the mandate, Exxon, a mathematical error in calculating bond data, was reconsidered. And Exxon specifically say that any fact determined below could not be changed. Also, if you look at the Barch case, it states that mandates must be strictly followed, and settled issues can't be relitigated. And in Barch, the only thing that was changed was a mathematical error in calculating the damages, I believe. And if you look at the Myers case, it states that in Myers, it was a very strange thing that the appellants tried to do. They tried to bind the appellate court with the law of the case established in the lower court, which is not law of the case. However, it stated that settled issues can't be relitigated and must adhere to decision of the earlier proceedings. Myers specifically states, the law of the case prevents the relitigation of settled issues in a case and requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy. Well, I guess for me, maybe the issue is this term, settled issues. And I'm having difficulty understanding how this could be settled when it was appealed. It was settled by the trial judge's decision. It was appealed to BAP. BAP did not change that decision, therefore establishing the law of the case. I think if you read PCH and a clear reading of the four cases relied upon by Judge Hastings, it establishes that. It did not affirm it. No, it did not affirm it. But in PCH, if you look at it, if you look at PCH, the exact same thing happened in PCH, Associates, which is a Second Circuit case. So now, the district court. You are in your rebuttal, just so you know. But you feel free to continue. OK, the district court deferred to the BAP court. I think that this flies in the face of the quotes in Myers, simply because it does not create a situation where judicial economy occurs. We have three appeals. We have three bankruptcy court orders, in this case. And five years have passed since the trial judge's decision. And the case has become injurious and injurious, and it's creating a bleak house. That's not economy. Secondly, we have no uniformity. We have two diametrically opposed trial court decisions. Bankruptcy court and the trial court are diametrically opposed. How is that uniformity? Uniformity would have occurred had the judge, Judge Hastings, followed the mandate and only presented rationale on issues of estoppel and release. If you look at this entire case, which I think under House, you have the right to do that, and you have the duty to do that. The appellants prevail upon the law and the facts. The facts show that the intent was to create a trust. Testimony, tax records, minutes, memos, letters, all show that a trust was created. The intent of TSF was to provide for a conduit to feed and re-establish TSE. All records at the time TSF filed show it only had bare legal title because it was a trust. The bank information centers did not even rely upon or consider these funds to be collateral. The buyouts of REI and the Hoytches both reserved their rights to the trust fund. And the ultimate fact, $793,000 was distributed, went to TSF, TSF distributed those monies to the Omaha group only, not its other 40 members. And this court should also see that we prevail upon the law. The judge Hastings clearly misread the cases she relied upon. She violated the mandate, she disregarded law of the case, and she changed the ruling in the case without any new evidence, a showing of clearly erroneous decision resulting  Affirming this judge Hastings' ruling would create a situation where appellant's beneficial interests would be converted into a gift to centrists who basically didn't even consider these funds to be collateral. Secondly, it would create a situation where the trial judge could do what this court couldn't even do. It could reverse the findings of a trial judge without a finding that the trial judge was clearly erroneous. Based upon this, this court should reverse the district court and the successor bankruptcy court orders and find that the funds in question are property of the appellants and not surcharge these funds for payment of the trustee's fee in accord with law versus Siegel because the funds are not part of the bankruptcy state. If there's no further questions, I'd like to reserve my five seconds. You may. We'll hear from Mr. Scala. Scala, sorry. May it please the court. My name is Dave Scalca. I represent Applee Centrist Federal Credit Union, a federally charted credit union. The bankruptcy court found that the appellants failed to prove by clear and convincing evidence that an express, resulting, or constructive trust had been created in relation to the tri-state financial funds at issue. The district court found that the bankruptcy court did not clearly err in doing so. The bankruptcy court addressed the abundance of evidence contradicting the appellant's claim in its 37-page order. Tri-state financials and the appellant's accounting, conduct, and statements contemporaneous with and subsequent to the transactions directs the conclusion that the appellants contributed capital or loaned money to tri-state financial and then tri-state financial loaned money to tri-state ethanol. There is not a single document prior to appellant's December 2009 demand that refers to a trust relationship. There is not a single document, accounting record, communication, or party action which is inconsistent with a debtor-creditor or equity investor-company relationship. Yet there are a number of documents, accounting records, communications, representations to the IRS, and bankruptcy courts and actions that are entirely inconsistent with a trust relationship. Appellants do not challenge as incorrect a single fact the bankruptcy court, Judge Hastings, found, only the weight to be given or the legal conclusion to be drawn from that fact. Appellants do not seriously challenge the conclusion that Judge Hastings' opinion, standing by itself, does not clearly err in determining that appellants did not clearly and convincingly prove their case. Appellants dedicate less than two full pages of their main brief to challenge any of the district court's appellate analysis. Appellants provide no analysis challenging the legal basis for the district court's reasoned deference to the bankruptcy appellate panel's interpretation of its own mandate. How much deference should the district court give in that situation? Particularly in this situation. If any. Right, no, it should. And particularly in this situation. Because there was, what appears to be, while they had the right to appeal on the last occasion to the district court, the district court properly took notice of, when it was giving deference, there was, what appears to be, some form shopping. Because what's clear is, had this been appealed as the route it had been the prior two occasions, it would have been before the bankruptcy appellate panel. And I would assume opposing counsel would acknowledge that, were he to make the same arguments to the bankruptcy appellate panel that he made to the district court, that no, you really don't understand your own mandate. It would rule, as it did on the second appeal, that look, this is the scope of our mandate. We didn't rule on anything. The district, the bankruptcy court was free to reconsider anything as part of its prior ruling. And in fact, it said, it's still completely free to resolve anything. So in that context, particularly, Your Honor, it should give great deference to its own interpretation of the scope of its mandate. Well, address the law of the case issue. And what I'm most interested in, you all cite a plethora of authority all over the nation. Tell me what authority of this court resolves it. Usury. In re usury. OK, and what part of it? Because it's an affirmance. You know what it is? A per curiam affirmance? Yes, I do. Yes. And look, well, from this court, it's an affirmance. Obviously, the detailed opinion is from the bankruptcy appellate panel. And the bankruptcy appellate panel relied upon that. And I think appropriately, this court affirmed it per curiam. And with a part of that, particularly, and the bankruptcy appellate panel referred to it  of Judge Mahoney's rulings. And the bankruptcy appellate panel made that clear when it went up on appeal the second time. Say, look, that's what we meant. We simply were, we listened to the trustees and centrists' arguments on the first appeal that Judge Mahoney was silent about several of our defenses. Judicial estoppel, equitable estoppel, statute of limitations, and release. And on top of that, Judge Mahoney issued a contradictory ruling after the trial judgment when the trustee asked for surcharge. And he specifically found that Mr. Jandrin misled the trustee, which would be one of the elements for our equitable estoppel claim. So it appropriately remanded it. And so it would be the injury usury, Your Honor, that would resolve this. There wasn't an implicit or express adoption of any of the bankruptcy court's rulings. And therefore, there's no law of the case. Appellants. And by adoption, you mean by the BAP? Correct. OK. What about by the district court? Where does it play in this? It has the same status as the BAP in most respects. Right. Because it acts as an appellate court. It's reviewing whether or not the bankruptcy court clearly erred in finding that the appellants did not clearly and convincingly prove their case. And they would take into account whether or not there is law of the case from prior rulings of which it can look to what was not done by the bankruptcy appellate panels. It simply, the first time, remanded, said, you know, we think this is not final and that Judge Mahoney should further explain. And then the second time, it said, look, let's just make it clear. We didn't rule on anything. Nothing's final yet. And the bankruptcy court can do whatever it wants. Appellants provide no legal analysis challenging the BAP statements on the second remand that the bankruptcy court was still not bound by its earlier rulings. Instead, appellants' arguments boil down to this contention. The bankruptcy appellate panel has no ability to state what its scope of its own mandate is. And appellants, by appealing to the district court on this last occasion, made sure the bankruptcy appellate panel did not have the opportunity a second time to state what its mandate meant. The district court, as I said expressly and appropriately noted in deferring to the bankruptcy appellate panel's description of the scope of its mandate, that a factor in doing so is the appellate's appellate maneuvering away from repeated review by the bankruptcy appellate panel. Appellants must concede that had they made this last appeal to the bankruptcy appellate panel, it would remain consistent with its prior description of the scope of its mandate. I'm still on law of the case, you can tell by my question. If we were in the Second Circuit, the PCH case would be different, right? No, I don't follow that. I don't follow that argument. I think the Second Circuit used the Moore's language. You know the quotation from Moore's federal practice. I don't have it on the top of my head, Your Honor. But you know what it is. And they said that in a situation very much like this, that it is the law of the case where it goes up and it's not discussed on the first appeal. Except that in this case, first of all, I think there was more of a, if I recall correctly, in the PCH, there was more of an issue of what legal elements or law should be applied as opposed to reconsideration of facts. As well as we had the express direction by the bankruptcy appellate panel here, consistent with usury, that there was no adoption by that court. There had been no appellate ruling as to whether or not Judge Mahoney was right or wrong. The bankruptcy court was right or wrong. I do think from that angle, it is distinguishable, Your Honor. And we do have controlling law here. The Second Circuit also acts like it's a discretionary call. In their key sentence, it's well within the discretion of the bankruptcy court and the district court to conclude that there's law of the case. That sounds like an odd legal conclusion. Well, law of the case is a doctrine. There's no statute. There's no law, that sort of thing. In this case, when it comes back and the direction is to please elaborate on certain factors and the sitting bankruptcy judge looks at the record and sees that some things needs to be redone, again, there's nothing that has fixed any findings. There's been no ruling from an appellate court on that matter. There's been a determination that it's not a final situation. And I think something that's being lost here, actually, well, no, it's not being lost here, Your Honor. You noted it in the appellant's oral argument, is for the first time, and they see this problem, is until now, they didn't see that there was any error with simply the bankruptcy appellate panel remanding it back for further explanation. And they, for the first time before this court, in their briefs to you, contend that the BAP simply wasn't supposed to, for some reason, wasn't supposed to remand it, didn't have the authority, didn't have some right to remand that back. That's not appropriately before this court. And so they have to start, at least with the premise that it was appropriate to remand it back for further consideration. And having not adopted, again, per usury, ushery, excuse me, you pronounced it ushery. I've been pronouncing it ushery for several years now. I don't know for sure. Go ahead. But there was no implicit or explicit adoption. There's no law of the case. But even assuming for the sake of argument, Your Honor, that on the initial remand, the bankruptcy court was only to consider the issues at trial that Judge Mahoney did not rule upon, statute of limitations, the release, judicial estoppel, equitable estoppel, the appellant's appeal has no foundation. Because the bankruptcy court found that regardless, all the appellants that remain signed a written release in 2006, that all the claims the appellants have against Tri-State Financial, including those asserted in this matter, they've been released. Appellant's contention in this court against this finding is not based on, no, the bankruptcy court interpreted some sentence wrong in the release. It's simply, well, if we take the testimony from the trustee, who was not a party to the release, we, he seems to indicate that he thinks maybe it didn't release certain things. And they state astonishment as to how broad the release that they signed is. So regardless, we have a release of the claims. And that's been a finding that clearly that the bankruptcy court was entitled to make based on that first remand. The funds at issue are property of the Tri-State Financial Bankruptcy Estate. The funds are payment on a court-resolved administrative claim for money that Tri-State Financial stated. It loaned Tri-State ethanol in 2003 and 2004. It stated that to a court, which would be judicial estoppel, stated it to the bankruptcy court in South Dakota, and to which they filed under penalty of perjury in that bankruptcy court, when it was owned by the appellants and managed in part by Mr. Jandron. Appellants at best, then, were beneficiaries of an undocumented promise of Tri-State Financial to pay the appellants the funds upon receiving them from Tri-State ethanol, which Wright is junior to the trustee's hypothetical creditor powers under 11 U.S.C. Section 544. Bankruptcy court did not clearly err in determining that the appellants did not prove their case for an express, resulting, or constructive trust by clear and convincing evidence. And in all events, did not err in determining that the appellants released their claims in this case in writing in 2006. Centrist Federal Credit Union prays that this court affirmed the district court's memorandum in order. The court has no further questions. Thank you. Thank you for your argument. Ms. Dolan, please give Mr. Haley one minute. Your Honor, I think it's clear that usury is not controlling in this case. Usury only involved the reconsideration of damages in accordance with the mandate. Here we have a case where the judge exceeded her mandate and reversed the entire finding of the trial court. Judge Mahoney's decision, the trial court, decided this case and established the law of the case. And it was never changed by the appellate court. Therefore, it remained the law of the case and she could not change it in accordance, unless she made the findings, the little earth findings, which she did not. As per release, the release only released TSF from bad actions. It did not give up ownership rights because TSF continued to operate. The people continued to be the owners. The people that signed those releases did not give up their ownership rights. The beneficial right to these funds are ownership rights. And additionally, not all of the Omaha group signed those releases. Correct. Thank you for the argument. And case number 16-3923, Allison versus Centris Federal Credit Union, is submitted for decision.